IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | § § § § | No. 516, 2015 |
| Defendant Below-Appellant, | § § | Court Below: Superior Court |
| v. | § § | of the State of Delaware |
| STEPHANIE BUCKLEY, | § § § | C.A. No. K14C-03-028 |
| Plaintiff Below-Appellee. | § § | |

Submitted: May 11, 2016
Decided: May 19, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Colin M. Shalk, Esquire (*Argued*), Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, for Appellant.

Michael J. Malkiewicz, Esquire (*Argued*), Barros, McNamara, Malkiewicz & Taylor, P.A., Dover, Delaware, for Appellee.

**STRINE**, Chief Justice:

The Delaware Code requires that motor vehicle insurance include coverage for PIP benefits, which provide compensation to automobile occupants who are injured in an accident for various expenses, including medical bills and lost earnings. In this case, the plaintiff, Stephanie Buckley, seeks PIP benefits under 21 *Del. C.* § 2118, which provides that PIP benefits "shall be applicable to each person occupying such motor vehicle *and* to any other person injured in an accident involving such motor vehicle, other than an occupant of another vehicle."[1] The defendant, State Farm, insured the school bus that Buckley intended to take to school on March 27, 2012. Buckley was hit by another vehicle when, after receiving the signal from the driver of the bus State Farm insured, she crossed the street to board the bus. In a detailed opinion, the Superior Court carefully explained why Buckley was entitled to PIP coverage from State Farm, addressing myriad issues raised by the parties.[2]

On this appeal, we affirm for a straightforward reason. As the Superior Court properly noted, school buses are different than other vehicles.[3] In the case of student Buckley, she was to enter and exit the school bus only when told to do so

---

[1] 21 *Del. C.* § 2118(a)(2)(c) (emphasis added).
[2] *See Buckley v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 4515699, at *4–6 (Del. Super. July 27, 2015).
[3] *See id.*

by the bus driver.  This is made clear by both the Delaware Commercial Driver License Manual[4] and the Delaware Code,[5] and is also the law in many other states.[6]

Given that reality, the Superior Court had no difficulty finding that the school bus was involved in the accident for purposes of § 2118, because the bus driver, by law, controlled the process by which Buckley entered and exited the bus, and the accident occurred after the bus driver signaled her to proceed and she followed that instruction.  We recognize that insurers have faced strained claims for PIP coverage by plaintiffs seeking to recover by claiming that vehicles that had no genuine causative role in an injury were "involved," or that someone was injured in a situation involving an automobile, but which would not be thought of by most people as an automobile accident.  In one of those stretch cases, *Sanchez v. American Independent Insurance Co.*, which involved a passenger being shot by

---

[4] *See* App. to Opening Br. at 110 (Del. Commercial Driver License Manual § 10.2.2) ("Students should board the bus only when signaled by the driver.").

[5] *See* 14 *Del. Admin. C.* § 1105, Reg. 9.1.11 ("Before crossing the road to board the bus cross only upon an audible clearance signal from the driver/aide."); *id.* Reg. 10.8 ("Pupils who must cross the road to board the bus or after leaving the bus shall cross at a distance in front of the bus and beyond the crossing control arms so as to be clearly seen by the driver and only upon an audible clearance by the driver.  The driver shall signal pupils to cross by instructions through the external speaker of the public address system."); *see also* 21 *Del. C.* § 4166.

[6] *See, e.g.*, IOWA CODE § 321.372(2) (West 2016) ("All pupils shall be received and discharged from the right front entrance of every school bus and if said pupils must cross the highway, they shall be required to pass in front of the bus, look in both directions, and proceed to cross the highway only on signal from the bus driver."); 5 ILL. COMP. STAT. 11-1423(a) (West 2016) ("At all pick-up points where it is necessary for a school bus passenger to cross the roadway to board the bus, the school bus driver shall signal the awaiting passenger when it is safe to cross the roadway ahead of the bus."); N.Y. VEHICLE & TRAFFIC LAW § 1174(b) (McKinney 2016) ("The driver of such school bus, when receiving or discharging passengers who must cross a public highway, street or private road, shall instruct such passengers to cross in front of the bus and the driver thereof shall keep such school bus halted with red signal lights flashing until such passengers have reached the opposite side of such highway, street or private road.").

a pedestrian who intended to shoot another pedestrian, the Court found for the insurer and held that the injury was not caused by an accident within the meaning of § 2118.[7] In another, *Kelty v. State Farm Mutual Insurance Co.*, the Court found for the claimant and held that he was injured in an accident for purposes of § 2118 even though he was in a tree and tethered to the vehicle, which then moved and pulled him off his perch.[8] Without saying much more about either case, we can safely say that it is much easier to find that what happened to Buckley was an accident as contemplated by the General Assembly in drafting this statute, which is part of the Code dealing with motor vehicles. Because of the costs to insurers, and therefore consumers, of allowing claims that are not within the intended application of the statute, this Court has developed tests that attempt to sensibly screen out frivolous cases while allowing recovery in cases that fairly fall within the statute's mandate.[9] But, as the Superior Court found, the concern that finding that any vehicle in any way present when someone is injured gives rise to PIP benefits, while legitimate, is not present in this case.[10] Here, the relationship between the school bus's proper operation in safely picking up and discharging its student passengers was clearly involved in the accident, and that obvious reality

---

[7] 2005 WL 2662960, at *1–3 (Del. Oct. 17, 2005).
[8] 73 A.3d 926, 928 (Del. 2013).
[9] *See, e.g.*, *Kelty*, 73 A.2d 926; *Selective Ins. Co. v. Lyons*, 681 A.2d 1021 (Del. 1996); *see also Gray v. Allstate Ins. Co.*, 668 A.2d 778 (Del. Super. 1995).
[10] *See Buckley*, 2015 WL 4515699, at *6.

3

gives no comfort to potential plaintiffs who might contrive non-meritorious PIP claims.

As important, what happened to Buckley is something that is within the commonly understood meaning of a motor vehicle accident, as Buckley was struck by a vehicle while in the process of boarding the bus. Any reasonable person would refer to that as a car accident. And in a prior case under § 2118, the Superior Court held that for an "accident" to occur under that statute, "[t]he injury must originate from, be incidental to, or have some connection with the use of a motor vehicle," and "must have occurred by virtue of the *inherent nature* of using the motor vehicle."[11] Buckley's injury in this case met both of these requirements.

Further, the fact that the other vehicle that struck Buckley might have been at fault does not deprive her of eligibility to receive PIP coverage from the policy covering the bus. Had Buckley been on the bus, with its lights properly flashing, and another vehicle rear-ended the bus and Buckley were injured, she would be entitled to PIP coverage as the bus clearly would have been "involved" in the accident. In the special situation of a school bus, where Buckley's actions in boarding the bus were directed by law by the driver as an integral and essential part of the driver's operation of the vehicle—which does not allow its passengers to enter and exit the bus until certain required actions are taken by the bus driver that

---

[11] *Gray v. Allstate Ins. Co.*, 2007 WL 1334563, at *2 (Del. Super. May 2, 2007) (emphasis added) (citations omitted).

4

involve not only action by the driver but the employment of equipment on the bus[12]—the bus is as involved in the accident as the one in the prior example.

Here, the Superior Court properly recognized that by regulatory mandate, a student's entry and egress from a bus is controlled by the bus driver, and that the bus driver's instruction therefore involved the bus in the accident that befell Buckley.[13] This recognition reflected a common sense acknowledgement of the distinct rules governing school buses, their drivers, and the students who ride them.[14] Because this straightforward application of the statute suffices to resolve this case, we do not need to reach the other issues presented to the court below and we express no opinion as to their resolution.[15]

---

[12] *See supra* notes 4–5 and accompanying text.

[13] *See Buckley*, 2015 WL 4515699, at *5–6.

[14] *See also Cawthon v. Waco Fire & Cas. Ins. Co.*, 358 S.E.2d 615, 618 (Ga. App. 1987) (finding that student was insured under school bus's insurance policy because "[a] child crossing a road while a school bus is standing guard with its lights flashing, its stop signals activated and all visual signals functioning is under the protection of the school bus"); *Westerfield v. LaFleur*, 493 So. 2d 600, 605–06 (La. 1986) (explaining that "[t]he child, the bus and the bus driver are . . . bound together legally and practically in a special, exigent relationship, from the moment the bus stops and signals until the child is safely aboard," and concluding that the decedent "was an insured when she was killed because she was in the process of traversing the roadway under the protection of law in response to an immobile signalized school bus with the intention of boarding it for transportation to school"); *Kantola v. State Farm Ins.*, 405 N.E.2d 744, 746 (Ohio Mun. Ct. 1979) (explaining that child who was struck by an automobile while crossing road after exiting school bus was covered under insurance policy because "[c]rossing the street . . . , with the stopped school bus as a protective measure, is within the time framework, which could be reasonably expected").

[15] Buckley has made some sensible arguments about whether the doctrines we have used to ensure that strained PIP claims are not granted, *i.e.*, claims that are contrary to the intent of the statute and that would raise insurance costs for consumers, are too rigid and might operate too broadly to screen out claims like hers where the vehicle is plainly involved in the accident, in the normal sense of playing a substantial role in a vehicle accident that injures the plaintiff. In fact, *Sanchez* and *Kelty*, and other cases like them, tend to involve situations where there was no

5

Therefore, the Superior Court's judgment of July 27, 2015 is affirmed.

---

vehicle "accident" in the common sense, but rather an incident that occurred where a vehicle was near the scene—such as when the victim was shot sitting in his car. Very few Americans would think that a shooting in a car was a "car accident." Here, there was plainly an accident in that common sense. Because the regulatory regime that governs the boarding and exiting of school buses so plainly involved the school bus in the accident that befell Buckley in that normal sense, we see no need to revisit these doctrines here. In fact, although State Farm argues that the face of the complaint fails under *Kelty*, the Superior Court persuasively explained why even under *Kelty*, Buckley prevailed given the special role school bus drivers play in the boarding process. *See Buckley*, 2015 WL 4515699, at *5.

6